## AMERICAN EXPRESS CO. v. MERTEN.

No. 3640.    Opinion Filed July 14, 1914.

(141 Pac. 1169.)

CARRIERS—Loss of Express Package—Damages.  Where a trunk containing valuable articles of wearing apparel is delivered to an express company for transportation from a point in one state to a point in another, without a written declaration of the value of the trunk and its contents, but the agent of the company is advised that the contents are very valuable, and the same is accepted for shipment and no receipt or bill of lading is issued therefor, and the trunk and its contents are lost, held, the express company is liable for the reasonable value thereof.

(Syllabus by Galbraith, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by Hulda Wellsmeyer Merten against the American Express Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

*Devereux & Hildreth,* for plaintiff in error.

*Dale & Bierer,* for defendant in error.

Opinion by GALBRAITH, C.  This appeal is to review the judgment of the district court of Logan county, rendered upon the verdict of a jury for the value of a trunk and contents delivered to the plaintiff in error at Charles City, Iowa, for transportation to Guthrie, Okla., which it failed to deliver.

Numerous assignments of error are made, but, as stated in the brief of the plaintiff in error:

"These may all be considered as one, as they present in different phases the same question, to wit, that the tariff filed with the Interstate Commerce Commission and posted in the office was notice to the plaintiff that, unless she declared the value of the baggage, it would be shipped on the $50 valuation."

The petition, in brief, charged that the plaintiff in error as a common carrier was engaged in the express business, and that on June 30, 1910, the defendant in error delivered to it

a valuable trunk to be transported from Charles City, Iowa, to
Guthrie, Okla., for hire; that the trunk contained articles of
the aggregate value of $592.30, a schedule of which was at-
tached; that no written contract was entered into for the trans-
portation of such trunk; that by accepting the trunk with the
knowledge of its valuable contents the law imposed upon the
express company the duty to transport and deliver the same
safely at Guthrie for a reasonable charge, as specified in its
tariff of rates; that the trunk had not been delivered, but was
claimed to have been wholly lost—and alleged damages in the
amount of the value of the trunk and its contents, for which
amount, and interest, judgment was prayed.

The answer was, first, a general denial, and, second, it ad-
mitted the delivery of the trunk as charged in the petition, but
averred that the company had no knowledge of the contents
of the trunk, and denied that they were of the value as set out
in the petition, and alleged that at the time the trunk was delivered
the company had a tariff of charges which were fixed accord-
ing to the valuation of the articles, and that such tariff pro-
vided that the liability of the company was limited to $50 un-
less a just and true value was declared, and extra charges
paid or agreed to be paid based upon such higher valuation;
that the shipper had knowledge of this tariff, and that no val-
uation was declared on the contents of the trunk, and it was
shipped at a valuation of $50, and that was the extent of the
company's liability, and that it offered to pay the shipper that
amount prior to filing suit, which was refused, and that the
tender of that amount was made good by offering to pay the
same into court. The answer also alleged that no receipt was
issued, and no written contract for the shipment had been en-
tered into between it and the shipper, but that shortly after
the trunk was delivered to the company for carriage, it gave
to the shipper, and the shipper accepted, a written contract of
carriage, a copy of which was attached as Exhibit A; that this
contract expressly provided that the liability of the company
was limited to $50, unless a true and just valuation was stated
in the receipt, and an extra charge paid or agreed to be paid

therefor, based upon a higher value; that no extra charge was paid by the shipper for the carriage of the trunk, but the minimum charge was agreed to be paid therefor, showing a valuation not exceeding $50; and that the shipper never disclosed to the company that the value of the trunk exceeded $50. To the answer a reply· was filed, which was, first, a general denial, and, second, it alleged that the shipper was married to Robert Merten at Charles City, Iowa, on the 30th day of June, 1910, and that she and her husband started that day for their new home at Guthrie, Okla.; that she carefully packed the articles named in the trunk, and that the same were of the value set out in her petition, and were her wearing apparel, being principally her wedding outfit, and that, although she and her husband had purchased tickets from Charles City to Des Moines, and then at Des Moines had purchased tickets through to Guthrie, Okla., upon which she was entitled to check the trunk as baggage free, she did not do so because of the large value of the articles therein, and because she did not wish to risk the same being lost as baggage, and decided to send the same by express as the safer method of transportation, and that her husband, before leaving Charles City, Iowa, made arrangements with the agent of the express company to ship said trunk by express, and that in making such arrangements he told the agent that the contents of the trunk were valuable; that they were her wedding outfit, dresses and personal wearing apparel, and that on account of the value of the trunk and its contents same was being sent by express; that she never at any time agreed to place a valuation of $50 on the articles in the trunk, or agreed to or asked for a reduction from the regular tariff of charges for the carriage of the trunk and its contents from Charles City, Iowa, to Guthrie, Okla., at the real valuation; that she was ready and willing at all times to pay the proper charges on the arrival of the trunk at its destination; that by agreement with the agent of the express company at Charles City, Iowa, the same was to be forwarded collect, and the proper charges collected at Guthrie, Okla. She specifically denied that she entered into a written contract as alleged in the answer for the shipment of said trunk, or that

she was ever asked to enter into such contract, and averred that no receipt was issued or written contract whatever was made with the express company at the time of the delivery of the trunk to the company. She admitted that about a month or six weeks after the trunk had been received by the company, and after it should have arrived at its destination at Guthrie, the defendant attempted, without any authority, to deliver such a contract as that set out as Exhibit A to the answer, but averred that she never accepted the same, and the trunk and·its contents had, long prior to that time, been lost and the company had become liable therefor, and that there was no consideration for the contract set out as Exhibit A, and that she did not make it.

The evidence was conflicting in regard·to the issues of fact made by the pleadings. These·issues were: First, whether the defendant in error shipped her trunk and its contents by express under a written contract based upon the express company's tariff of charges, which are based on weight and value; second, whether the same was accepted and shipped without a special contract, except that implied by law, that she would pay the proper charges for the transportation as fixed by the tariff of charges, and that the company would be liable for such value in case it failed to transport and deliver; and, third, whether the express company was informed of the value of the trunk and its contents at the time it was delivered. These issues were fairly submitted to the jury under proper instructions as to the law, and the jury, by its verdict, found against the contentions of the company and in favor of the defendant in error, and, there being sufficient evidence to support these findings, the verdict is conclusive upon this court.

The argument of plaintiff in error in favor of its contention is summarized in the brief as follows:

"In the case at bar by the schedule giving rates, it is provided that, unless the shipper declares a higher value, then the rate shall be charged on a $50 valuation, and in proportion the rate is increased as the value is increased. This, we submit, is binding both on the shipper and the express company. The shipper cannot, without disclosing the rate on which he wishes the collection if the package is lost, ship under the cheaper rate,

and then, should the package be lost, collect damages on the higher rate. The schedule on file in the office is notice to the shipper, and he does business with the express company in view of this schedule, and that becomes a part of the contract."

As abstractions these propositions may be said to be correct, but they are not applicable to this case, for the reason that under the issues raised by the pleadings, the shipper did not ask for a lower rate, and did not request that the trunk be shipped at the lower rate, and then when it was lost seek damages on the higher valuation, but, on the other hand, she advised the express company of the value of the property at the time it was delivered to it for shipment. She was not asked to make a more specific declaration of value of the property, nor did she request the lower rate, but expressed her willingness at all times to pay the higher rate, based upon the real value of the trunk and its contents. From the fact that the company had a tariff of rates approved by the Interstate Commerce Commission, notice of which was posted in its office, under the circumstances disclosed by the record, the law did not imply a contract of shipment at the minimum rate and at a released valuation of $50. The company had the right to demand a specific declaration of the value in writing before accepting the trunk for shipment. It also had the right to accept the trunk, as it did, without a more specific declaration of value than that its contents were "very valuable." The approved tariff authorized the company to enter into a contract of shipment by which its liability might be limited to the express valuation named in the contract of shipment, but when the company accepted the trunk for shipment, with notice from the shipper of the value of its contents, and did not require a written contract or express declaration of the value, then the law made a contract for the parties whereby the obligation was imposed upon the company to safely deliver the property within a reasonable time, and placed the obligation on the shipper to pay the tariff rate according to the value of the property shipped. As was said by the Supreme Court of the United States in *Hart v. Pennsylvania R. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717:

"As a general rule, and in the absence of fraud or imposition, a common carrier is answerable for the loss of a package of goods though he is ignorant of its contents, and though its contents are ever so valuable, if he does not make a special acceptance. This is reasonable, because he can always guard himself by a special acceptance, or by insisting on being informed of the nature and value of the articles before receiving them."

While this decision was announced prior to the enactment of the original Interstate Commerce Act February 4, 1887, c. 104, sec. 20, 24 St. at L. 386 (U. S. Comp. St. 1901, p. 3169), we take it that the rule of law announced in the above excerpt was not affected by that act. Under the amendment to this act (Act June 29, 1906, c. 3591, sec. 7, 34 St. at L. 595 [U. S. Comp. St. Supp. 1911, p. 1307]), it was the duty of the company, upon receipt of the trunk for shipment, to "issue a receipt or bill of lading therefor." That the company failed in this statutory duty and accepted the trunk without issuing a receipt or bill of lading therefor does not lessen its liability and justify it in making a claim that its liability is released to the minimum valuation because such might have been done if the receipt or bill of lading had been issued and the released valuation agreed to therein.

Paragraph A of the syllabus in the case of *St. L. & S. F. R. Co. v. Bilby*, 35 Okla. 589, 130 Pac. 1089, reads as follows:

"As to interstate shipments, the common-law liability of the carrier for the safe carriage of property may be limited by a special contract with the shipper, where such contract, being supported by a consideration, is reasonable and fairly entered into by the shipper, and does not attempt to cover losses caused by the negligence or misconduct of the carrier (following *Adams Express Co. v. Croninger* [226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257])."

The case made by the record in the instant case is that the shipper delivered the trunk to the express company for shipment with the information that the contents were very valuable, and agreed to pay the higher rate on the higher valuation as prescribed in the tariff of the company, and the trunk was accepted for shipment without requiring the shipper to make a written declaration of the value, and without issuing a receipt

limiting the valuation of the property to $50, limiting the liability of the company to that valuation in case of failure to deliver at destination. In such a case, under the authorities, the company was liable to the shipper for the reasonable value of the property lost. *St. L. & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089. Practically all the cases decided prior to the time the Bilby case was handed down are collected in that opinion. See, also, *M., K. & T. Ry. Co. v. Walston,* 37 Okla. 517, 133 Pac. 42.

There is nothing in the decision of the Supreme Court of the United States filed April 6, 1914, in the case of *A., T. & S. F. Ry. Co. v. Robinson,* 233. U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. ——, against the conclusion above announced, since in that case a written contract of shipment was issued containing an agreed valuation on the property and a release of the company on that valuation. The court below instructed the jury that if this released valuation was not called to the attention of the shipper he was not bound thereby, and the Supreme Court held this to be error because this rule ignored the terms of the shipment set forth in the schedule and permitted a recovery on the contract made in violation thereof. Here no receipt or bill of lading was issued. That was an entirely different case from this, and the company was advised of the great value of the trunk, and the shipper was willing to pay the rate prescribed by the tariff, and did not ask or receive a reduced rate for shipment. No different contract from that authorized by the tariff of rates was intended to be made, or was in fact made.

The two instructions requested by the plaintiff in error were not correct statements of the law as applied to the case made by the record, and it was not error in the trial court to refuse the same. The instructions given by the court were not properly excepted to, and for that reason are not brought up for review, although we have examined same and find they correctly state the rules of law applicable to the issues raised by the pleadings.

The exceptions should be overruled, and the judgment appealed from affirmed.

By the Court: It is so ordered.